UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY J. DUJARDINE,

        Plaintiff,

                                    Case No. 1:07-cv-701
v.                                  Hon. Wendell A. Miles

MICHIGAN DEPARTMENT OF
CORRECTIONS,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendant Michigan Department of Corrections' motion for summary judgment (docket no. 11).

## I.      BACKGROUND

        Plaintiff alleges that he is a "Torah-Observant Jewish male who sincerely believes that he must keep the laws of kosher as Commanded by the Creator." Compl. at ¶ 4.  On or about April 6, 2006, plaintiff attempted to obtain a special accommodation from defendant Michigan Department of Corrections (MDOC) to participate in the Kosher Meal Program "as required by [his] sincere religious beliefs." *Id.* at ¶ 5.

        The general policy for determining access to a religious menu, MDOC Policy Directive 05.03.150, ¶ TT, provides as follows:

        A prisoner may eat from a religious menu only with the approval of the CFA Special Activities Coordinator.  Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion.  To request approval, the prisoner must submit a written request to the Warden, TRV Manager, or designee, as

appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden, TRV Manager or designee, as appropriate, of the decision; the Warden or TRV Manager shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

Policy Directive 05.03.150.[1]

The specific procedure for determining the access to the Kosher Meal Program is set

forth in Operating Procedure 05.03.150A (eff. 1/12/1998), which provides that:

K.     A prisoner who wants to participate in the Kosher Meal Program must submit a written request to the Warden or designee for approval. The request shall include a statement as to his/her religious beliefs which necessitate a Kosher diet.

L.     Upon receipt of such a request, the Warden shall verify that the prisoner is eligible to participate in the Kosher Meal Program based on the prisoner's designated religion by requiring the Assistant Deputy Warden for Programs or the chaplain to interview the prisoner to obtain a response to the following questions:

1.     Briefly explain the major teachings of your designated religion.

2.     Why is a kosher diet required by this religion?

3.     What is a kosher diet? In other words, how does it differ from food otherwise provided by the institution? What types of food are not allowed?

M.     A written report of the responses to the questions, along with the prisoner's request, shall be referred to the Special Activities Coordinator in the Office of Program Services, Administration and Programs, with a recommendation as to whether a Kosher diet should be approved. The Special Activities Coordinator shall review the documentation and advise the warden whether the request is approved. The warden shall ensure that the prisoner is advised if the request is not approved.

---

[1] For purposes of this opinion, "Policy Directive 05.03.150" refers to Policy Directive 05.03.150 effective May 24, 2004. The court notes that this Policy Directive was revised on September 20, 2007.

Operating Procedure 05.03.150A.

In his affidavit, MDOC Special Activities Coordinator Dave J. Burnett explained that the state has compelling governmental interests in limiting the Kosher Meal Program to prisoners whose faith requires kosher food and who demonstrate sincerity by not violating kosher standards. Burnett Aff. at ¶ 7, attached to defendant's brief as Exh. 7.  He listed three reasons:

> First, allowing prisoners who are not sincere to participate in the Kosher menu is offensive to those who are sincere, and often leads to conflict between the prisoners and between groups of prisoners.  Second, there is a compelling economic interest. Providing kosher meals requires extra effort and extra expense.  Separate Kosher kitchens are maintained at selected prison sites.  It is expensive to build and equip a Koher kitchen.  The Kosher kitchen and Kosher food storage areas are limited in size.  There is an interest in using this valuable space only for those who are sincere about the pursuit of their religious faith.  Third, in addition to the logistical requirements of keeping a kosher kitchen, Kosher meals cost two to three times as much as meals from the main food line.  That extra effort and expense should be reserved only for those for whom the meals are a religious requirement, and who demonstrate that they have enough knowledge to enable them to abide by the requirements of their faith.

*Id.*

Pursuant to Policy Directive 05.03.150 and Operating Procedure 05.03.150A, plaintiff underwent a religious diet interview with Chaplain Maguire at the Bellamy Creek Correctional Facility on October 26, 2006. Chaplain Maguire's Memorandum, attached to defendant's brief as Exh. 7-A.  The Chaplain notes that he asked plaintiff "the exact same questions as in last year to see if he had learned any more."  *Id.*  When asked to explain the major teaching of Judaism, plaintiff stated "Following God's laws," that there were "hundreds of them" which had been "passed down from generation to generation."  *Id.*  Plaintiff was able to name "a couple" of Jewish holidays.  *Id.*   However, Chaplain Maguire only pointed out one holiday identified by plaintiff (Passover).  *Id.*  Plaintiff described kosher food as "No blood in the meat . . . and that meat

3

and dairy had to be kept separate . . . meat and dairy are to be prepared and served separately." *Id.*

When asked "what is the goal or hope of Judaism," plaintiff could not think of anything. *Id.*

In his "overview" of plaintiff, Chaplain Maguire observed that plaintiff "is very serious about his faith, yet concerned that he will not be approved for his diet." *Id.* Nevertheless, the chaplain concluded that plaintiff did not qualify for the Kosher Meal Program:

> **Conclusion.** Mr. DuJardine was so upset about being denied last time that he was not prepared to be interviewed this time. He does have a basic understanding of his faith, but it was **NOT** well articulated during his interview. Based on the interview alone, he would not be qualified for concessions.

*Id.* (emphasis in original).

Chaplain Maguire made three recommendations in a supplemental note:

> First -- I don't believe he is of Jewish heritage so he will not get much help from outside in his pursuit of Judaism, so whatever help he receives will be from us. I believe he is sincere in his desire to convert to Judaism.

> Second -- in talking to him - he is one of the few not looking for a transfer out of the interview but rather truly seems to be interested in learning more about his faith.

> Third, he may benefit from a transfer to a facility where he can actually attend a Jewish service and learn about his faith firsthand without being granted his dietary concessions this would benefit to him [sic].

> If this can be [arranged] I would recommend such a transfer.

*Id.*

In an memorandum to the Warden of the Bellamy Creek Correctional Facility dated February 5, 2007, Mr. Burnett reviewed plaintiff's request pursuant to Operating Procedure 05.03.150A ¶ M.  *See* Burnett Memorandum (2/5/07) attached to defendant's brief as Exh. 7-B. Mr.

4

Burnett noted that plaintiff had been "self-identified as Jewish since August 2005"[2] and was denied

kosher accommodations on October 20, 2005.  *Id.*  Mr. Burnett stated that while plaintiff seemed

sincere, he had taken no steps to convert "beyond self-declaring himself Jewish," i.e., he has not

contacted a rabbi, cantor or other person to mentor him.  *Id.*  "The fact that he has not done so

suggests he is not pursuing a conversion that would be recognized in the free world."  *Id.*  In

addition, plaintiff provided vague information about the major teachings of his faith and gave such

limited information about kosher requirements that it is doubtful that he could keep kosher.  *Id.*  Mr.

Burnett reached the following conclusions:

> DuJardine has been self-identified as Jewish for more than a year.  It is expected that he would have made himself more knowledgeable in that year if he was sincere about pursuing the practices of Judaism.  While sincerity is based on extrinsic data that is difficult to ascertain, it appears that DuJardine has not been sincere about pursuing the practice of Judaism.  Consequently, based on the information available to me, and based on the indication that he has not been sincere in his practice of his faith, DuJardine's request for accommodation with the Kosher menu is denied at this time.  He should not be transferred for the purpose of Kosher accommodations.  DuJardine is encouraged to study his faith.  He is encouraged to secure literature to assist him in that task.  He is encouraged to contact a mentor to assist him in taking steps to conversion if that is his goal.

> It is understood that the denial of admission to a special religious menu is not a failure to recognize faith preference.  Declaration of preference, requests to attend religious services, and access to religious materials must be processed according to Department policy.

*Id.*

Four months later, on June 29, 2007, plaintiff underwent an interview with Chaplain

Swierenga at the Muskegon Correctional Facility (MCF).  At that time, Chaplain Swierenga

recommended that plaintiff be placed on a Kosher menu:

---

[2] *See* Policy Directive 05.03.150, ¶ T (eff. 5/24/04) (prisoners may change their religious affiliation "twice a year" by providing written notice of the change to the institutional chaplain).

> Prisoner DuJardine converted from Lutheranism to Judaism in 2005 while at Riverside Corr. Fac.  He began studying about the Jewish faith at that time, and later, when he was at the Cotton Facility for three months he attended the Jewish Services held there.
>
> He arrived at MCF in May of this year and immediately began attending out Jewish weekly meetings and also the monthly Jewish study with Rabbi Alpert.  He has been faithful in his attendance at Jewish services and is sufficiently knowledgeable about the Kosher laws and requirements.  Based on his behavior he seems sincere in his belief and intentions, and is recommended for approval for the kosher menu.

Swierenga Memorandum (6/29/07) attached to defendant's brief as Exh. 6-B.  Clearly, plaintiff had taken significant steps since his prior interview.  On July 6, 2007, MCF Warden Shirley Harry submitted plaintiff's request for kosher meals to Mr. Burnett for determination and review.  Warden Harry's request attached to defendant's brief as Exh. 6-C.  On July 10, 2007, Mr. Burnett advised Warden Harry that plaintiff's last request for kosher meals was denied on February 5, 2007, that he must wait one year before reapplying, and that he cannot apply for kosher meals until after February 5, 2008.  Burnett Memorandum (7/10/07) attached to defendant's brief as Exh. 6-D.

Plaintiff subsequently filed this action under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1, claiming that the MDOC substantially burdened the practice of his sincere religious belief in violation of the statute.  Specifically,

> a.   Defendant denied Plaintiff his fundamental right to partake in the Kosher Meal Program as mandated by his [sic] the Covenant of this faith; and
>
> b.   Defendant sanctioned Plaintiff for his insufficient memory and used that deficiency to question the sincerity of his religious beliefs.

Complaint at ¶ 9.  Plaintiff seeks relief in the form of a reasonable accommodation of his sincere religious beliefs by placement on the kosher meal program.

## II.    Standard of review

The MDOC has moved for summary judgment pursuant to Fed. Rules Civ. Proc. 56(b). Summary judgment is appropriate under Rule 56(b) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).   In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

### III.     Discussion

Plaintiff's claim arises from RUILPA, which provides in pertinent part as follows:

(a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

A RLUIPA claim includes four elements:

On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof. [42. U.S.C.] § 2000cc-2(b). Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest. *Id.*

*Spratt v. Rhode Island Department Of Corrections*, 482 F.3d 33, 38 (1st Cir. 2007).  *See also Koger v. Bryan*, 523 F.3d 789, 796-97 (7th Cir. 2008).

Plaintiff contends that by denying his kosher meal accommodation, the MDOC "is now seeking to discriminate outside the confines of Congress['] intent within [RLUIPA]," because he has an "insufficient memory" to remember the tenets of his religion.  Compl. at ¶ 9; Plaintiff's Response at 2.  He believes that "[t]he only question before this Court is what degree of sincerity is necessary for Plaintiff to qualify for the Kosher Meal Program." *Id.*  Plaintiff further contends that while "[k]nowledge of the practices of a particular faith may be a factor in determining sincerity . . . it cannot be an exclusive test of the sincerity of an individual's religious belief." *Id.* at 3.  In this

regard, plaintiff asserts that "requiring him to know every facet of Judaism was not the intent of the Policy." *Id.*

   The MDOC seeks summary judgment on two grounds. First, the MDOC contends that its procedure used to determine whether a prisoner holds a sincere religious belief requiring a kosher diet, MDOC Policy Directive 05.03.150-A is constitutional. It is unnecessary to address this ground, because plaintiff's complaint does not challenge the constitutionality of the policy directive.

   Second, the MDOC contends that it has a compelling governmental interest in limiting access to the kosher meal program to prisoners who have a sufficient knowledge of Judaism and its dietary requirements. With respect to the second ground, plaintiff's complaint does not challenge the MDOC's compelling governmental interest to limit access to the kosher meal program. Rather, plaintiff challenges the ultimate determination by the MDOC denying his request for kosher meals on the ground that his religious beliefs in Judaism were not sincere.

   A threshold issue in a RLUILPA claim is whether plaintiff had a "religious exercise" that required kosher meals. That does not appear disputed here; rather the issue with the sincerity of this particular plaintiff in converting to Judaism. Here, the MDOC denied the requested accommodation for a kosher diet because plaintiff had not been sincere in the practice of his faith. "Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter v. Wilkinson*, 544 U.S. 709, 725, n. 13 (2005). "[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Id.*

The sincerity of a litigant's religious beliefs is a question of fact. *See United States v. Seeger*, 380 U.S. 163, 185 (1965); *Mosier v. Maynard*, 937 F.2d 1521, 1526-27 (10th Cir. 1991). As the court observed in *Seeger*, "while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.'" *Seeger*, 380 U.S. at 185. "Sincerity analysis" seeks to determine the subjective good faith of a religion's adherent. *International Society for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 441 (2nd Cir. 1981). This analysis evaluates extrinsic evidence, such as whether the adherent acts in a manner inconsistent with the expressed belief or whether there is evidence that the adherent "materially gains by fraudulently hiding secular interests behind a veil of religious doctrine." *Id. See, e.g., Sligar v. Champion*, No. 93-5051, 1993 WL 492998 at *2 (10th Cir. 1993) ("[t]he prison surely is entitled to request an essay from a prisoner who is seeking a religious exemption in order to evaluate the sincerity of the prisoner's beliefs").

Plaintiff contends that the MDOC's determination regarding the sincerity of his beliefs was based entirely on his interview and not supported by the reports of Chaplains Maguire and Swierenga. Viewing the facts in the light most favorable to plaintiff, it appears to the court that the MDOC appropriately evaluated the sincerity of plaintiff's beliefs. Although Chaplain Maguire found that plaintiff was "very serious about his faith," the chaplain also found that plaintiff exhibited only a "basic understanding of his faith," which led the chaplain to conclude that plaintiff did not qualify for dietary concessions "based on the interview alone." After recognizing this deficiency in plaintiff's knowledge of his self-declared faith (i.e., Judaism), the chaplain recommended that plaintiff be transferred to another facility so that he could "actually attend a Jewish service" and "learn about his faith firsthand" before receiving the kosher meal accommodation. In short,

Chaplain Maguire could find little extrinsic evidence demonstrating the sincerity of plaintiff's belief other than plaintiff's recent decision to identify himself as Jewish.

In performing a review of plaintiff's request pursuant to Operating Procedure 05.03.150A ¶ M, Mr. Burnett noted plaintiff's lack of knowledge regarding his chosen faith (Judaism).  In addition, Mr. Burnett articulated other extrinsic evidence of plaintiff's lack of sincerity, including plaintiff's failure to contact a rabbi or cantor to assist him in his studies, plaintiff's failure to learn about Judaism since his self-declaration in 2005, plaintiff's failure to pursue a conversion that would be recognized in the free world and plaintiff's lack of sufficient knowledge to keep kosher.  The reasons articulated by Mr. Burnett are consistent with the compelling governmental interests for limiting the Kosher Meal Plan, such as avoiding conflict between prisoners due to lack of sincerity in their beliefs and limiting the effort and expense of providing kosher food to those "who demonstrate that they have enough knowledge to enable them to abide by the requirements of their faith."  In construing RLUIPA, the courts should give deference to the expertise and experience of prison officials in matters involving prison security. *See Cutter*, 544 U.S. at 725, n. 13; *Hoevenaar v. Lazaroff*, 422 F.3d 366, 371 (6th Cir. 2005).

Chaplain Swierenga's later determination that plaintiff now satisfied the requirements for the Kosher Meal Program at MCF in June 2007 does not change the fact that he failed to meet the requirements when he had his interview with Chaplain Maguire in February 2007.  Although Chaplain Swierenga felt that plaintiff was sincere in his beliefs and recommended the Kosher Meal Program, plaintiff was denied acceptance into the program because it was his second application submitted within the year.  *See* Policy Directive 05.03.150 ¶ TT (providing that a prisoner whose request for a religious menu is denied "shall not be allowed to submit another request to eat from

that religious menu for at least one year").  Nothing in the record suggests that plaintiff could not re-apply for the Kosher Meal Program after February 5, 2008.[3]

Finally, while plaintiff contends that knowledge of the practices of a particular faith should be only one factor in determining sincerity, he has failed to demonstrate a less restrictive method to determine sincerity than the periodic interview process utilized by the MDOC.  Mr. Burnett's affidavit set forth MDOC's compelling interests in limiting the kosher meal program. Plaintiff does not dispute that the MDOC should be "the religious evaluator for Michigan prisoners [sic] participation in religious program meals."  Plaintiff's Response at 2.  In this regard, the court has previously found that the MDOC's interview procedure for determining eligibility for the Kosher Meal Program does not violate RLUIPA.  *See Caldwell v. Burnett*, No. 1:05-cv-586 (W.D. Mich.) (docket nos. 54 and 62).

In summary, plaintiff has failed to demonstrate that his religious exercise has been burdened under RLUIPA.

## IV.   RECOMMENDATION

Accordingly, I respectfully recommend that defendant's motion for summary judgment (docket no. 11) be **GRANTED**.


Dated:  August 4, 2008                            /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge

---

[3] Because plaintiff's only requested relief is to participate in the Kosher Meal Program, it appears to the court that this action may be rendered moot if he successfully re-applied for the program after February 5, 2008.  However, neither party has advised the court on whether plaintiff ever re-applied for the program.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).